UNITED DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **ENGINEERED ABRASIVES, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | Case No. 1:15-cv-06983 |
| v. | ) | |
| | ) | |
| **AMERICAN MACHINE PRODUCTS & SERVICE INC., EDWARD RICHERME, KAREN RICHERME AND EDWARD C. RICHERME** | ) ) ) ) | Honorable Michael T. Mason |
| | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT AND FOR SANCTIONS

Plaintiff EA Engineered Abrasives Inc. ("EA") submits this Motion To Enforce Settlement Agreement and for Sanctions ("Motion") pursuant to the Court's retained jurisdiction for enforcement of the settlement agreement, as expressly agreed to by the parties and provided in this Court's Agreed Order of Dismissal (Dkt. #35). Defendants have breached at least two terms of the settlement agreement, and pursuant to the express relief provided in the settlement agreement signed by the parties ("Agreement"), Plaintiff seeks nullification of the release in defendants' favor. In the alternative, EA seeks nullification of the entire settlement agreement, as there was no meeting of the minds on the scope of the settlement. Defendants untenable release argument, asserted in other courts, is in clear violation of the Agreement, has multiplied the proceedings and costs, wasted judicial resources, and must be sanctioned.

## I. Background Facts

On August 10, 2015, EA filed its complaint in the present action (this "Action") against the four named defendants, joint and several, in response to defendants' false and defamatory email to an EA customer asserting that EA machines posed a safety risk and could explode and kill anyone working nearby. *See,* attached Exhibit A, the Declaration of Joan L. Long ("Long Decl.") at 3, and attached Exhibit B, the Declaration of Grant H. Peters ("Peters Decl.") at 2. In their filed Answer, Defendants admitted the content and delivery of the defaming email, did not challenge the sufficiency of EA's facts or pleadings, did not assert any privilege or defense, and did not seek to dismiss any party or assert any counterclaim. Long Decl. at 4 and Peters Decl. at 3. Defendants stipulated to EA's motion for preliminary injunction, failed to enter any document or exhibit into the record, and did not produce a single document or piece of evidence during the discovery period set by the Court. Long Decl. at 5 and Peters Decl. at 4. After the close of discovery, the parties attended a settlement conference with this Court on June 2, 2016.

A. Settlement Conference Preparation

Prior to the settlement conference, and as required by this Court's Standing Order, EA submitted its settlement demand letter to defendants, and defendants responded with their required response and settlement offer. The letters of both parties dealt exclusively with the claims asserted in this Action and copies were provided to this Court. Long Decl. at 6 and Peters Decl. at 5. Prior to the settlement conference, EA's counsel drafted its own working copy of a settlement agreement ("Working Draft") with both specific and standard contract terms relating to this Action. Long Decl. at 7 and Peters Decl. at 6. The specific terms, contained on pages one and two of the Working Draft, were drafted to include EA's material terms of settlement, namely

a permanent injunction, liquidated damages, and payment ("Specific Settlement Terms"). Long Decl. at 8 and Peters Decl. at 7.

The remaining standard contract terms, contained on pages three and four, were taken from other agreements, but EA's counsel believed they were consistent with the sole purpose of the settlement, to resolve this federal action and all related claims. Long Decl. at 9 and Peters Decl. at 8. When drafted, EA's counsel did not intend the Working Draft to be the final settlement agreement document, but rather a tool for EA's use during the settlement conference negotiations. Long Decl. at 10 and Peters Decl. at 9. EA's counsel fully anticipated that the terms that were material to the agreement would be negotiated and revised during the settlement conference, which they were. Long Decl. at 11 and Peters Decl. at 10.

B.  Settlement Conference

At the start of the June 2, 2016 settlement conference, this Court emphasized to the parties the importance of negotiating in good faith as the only way the conference could continue or an agreement could be reached. Long Decl. at 12 and Peters Decl. at 11. The Court's instruction confirmed paragraph 14 of the Working Draft, which confirmed the parties required good faith dealing. Long Decl. at 13 and Peters Decl. at 12. The settlement conference negotiations between the parties, with the assistance of this Court, focused entirely on the Specific Settlement Terms. Long Decl. at 14 and Peters Decl. at 13.
During the settlement conference, and to aid negotiations of the Specific Settlement Terms, EA's counsel, for the first time, shared a copy of the Working Draft with defendants' counsel. Long Decl. at 15 and Peters Decl. at 14. Edits were made to the Working Draft as the parties negotiated the terms. Long Decl. at 16 and Peters Decl. at 15. Apart from the terms marked on

the Working Draft, no other terms or conditions were discussed or raised during the time the parties negotiated together. Long Decl. at 17 and Peters Decl. at 16.

The Court asked if the parties wished to submit a final clean copy of the Working Draft and Defendants' counsel stated he wanted to "get it all done today" and have the parties sign the Working Draft with the edits made. Long Decl. at 18 and Peters Decl. at 17. The Court asked EA's counsel to read the terms of agreement into the record, and EA's counsel read only the Specific Settlement Terms into the record. Long Decl. at 19 and Peters Decl. at 18. The Court questioned EA and each of the defendants individually on the record as to their agreement to the Specific Settlement Terms as read into the record by EA's counsel, and each defendant stated they agreed, without addition or qualification. Long Decl. at 20 and Peters Decl. at 19. (and transcript).

At no time before, or during, the settlement conference were any of the standard contract terms on pages three and four of the Working Draft mentioned, discussed, or negotiated. Long Decl. at 21 and Peters Decl. at 20. Specifically, at no time during the settlement conference, or at the reading into the record of the agreed terms, did defendants identify the release as a critical term, or even hint, that their agreement was premised on using the release in any other case. Long Decl. at 22 and Peters Decl. at 21.

C.  Post-Settlement Dismissal

Prior to the signing of the Joint Stipulated Motion to Dismiss, EA's counsel in this Action was contacted by EA's counsel in a separate and unrelated state case, stating defendants had alluded to using the federal settlement agreement to attempt to dismiss the state case. Long Decl. at 23 and Peters Decl. at 22. According to EA's separate state case counsel, a state case for theft of trade secrets brought against only 3 of the 4 defendants in this Action, has been in active

4

litigation since 2012, and is now at the summary judgement stage. Long Decl. at 24 and Peters Decl. at 23. On June 8, 2016, EA's counsel contacted defendants' counsel and raised the issue of defendants' claimed interpretation, and expressly stated that EA had not agreed to release the state case. EA's counsel requested confirmation that defendant's insurance appointed counsel had no authority to negotiate or settle the state case. Long Decl. at 25 and Peters Decl. at 24. EA's counsel indicated they would not file the joint motion to dismiss the present Action until receiving such confirmation. Long Decl. at 25 (Ex. A-1) and Peters Decl. at 25. Defendants' counsel responded confirming he did not represent the defendants in any case other than this Action and stated he did not understand our assertion and insisted the motion to dismiss the Action be filed. Prior to entering the dismissal, Defendants' counsel had actual knowledge that EA did not agree with defendants' claim as to the scope and effect of the release, but still signed the dismissal. Long Decl. at 26 (Ex. A-2) and Peters Decl. at 25. Defendants' and EA's counsel signed and filed a stipulated, voluntary dismissal **"of this action and all counts raised therein"**. (Dkt. # 33) (emphasis added). This Court entered an Agreed Order of Dismissal (Dkt. #35) which stated, in part, "The parties hereby agree that this case has been resolved amongst them and that '*all issues and controversies at issue in this case*' have been resolved to their mutual satisfaction." (emphasis added).

D.  Defendants' Bad Faith Filings

Defendants waited until this Court entered the Order of Dismissal with prejudice before they directly asserted <u>for the first time</u>, a professed agreement that the parties settled this federal Action ***and*** a pending state trade secret case ***and*** a prior non-dischargeable federal judgment for over $700,000, all for an insurance payment of $75,000. Despite expressly agreeing to this Court retaining jurisdiction for enforcement of the settlement agreement, defendants, tellingly, chose to

first assert their "release" with the state court, a court totally unfamiliar with and unaware of the federal settlement negotiations or the record created pursuant thereto. When notified by EA's counsel that EA would seek enforcement of the settlement agreement and sanctions with this Court, defendants' insurance-appointed counsel impulsively "doubled-down" on their game and filed a motion to release the non-dischargeable $720,000 judgment debt, again not filed with this Court. Interestingly, defendants' insurer has now interjected themselves as an interested party in the judgment debt, which will be another avenue of collection for EA. Defendants' efforts are an obvious attempt to end-around this Court, who presided over the settlement negotiations and conference, in an effort to avoid this Court's interpretation of the parties' intent at the time the Agreement was entered.

In addition to the defendants' interpretation of the release being so broad to be implausible, and the outcome so onerous as to be inequitable, the Agreement itself refutes defendants' claim. Defendants and their counsel have clearly shown bad faith and vexatious litigation tactics. This Court dedicated its valuable judicial resources to conducting a settlement conference for the purpose of working with parties who came to it, allegedly in good faith, to resolve the pending Action. EA negotiated in good faith and agreed to resolve the egregious defamation caused by the defendants in this Action. Defendants, on the other hand, it is now clear, did not negotiate in good faith and laid-in-wait until dismissal was entered to make a mockery of this Court and the settlement process and vexatiously multiply this and two other litigations with meritless release filings. Because this Court has express jurisdiction to enforce the terms of the settlement agreement, and is in the best position to weigh the critical determination of the parties' intent and agreement, this motion, and all the release disputes, are properly brought in this Court.

## II. Argument

It is undisputable that within the four corners of the federal settlement agreement entered in this case ("Agreement") the ***only*** lawsuit specified is this federal case, defined as "Action." Ex. C, Settlement Agreement, p. 1. All of the recitals are specific to this case, the permanent injunction terms are tailored to the claims brought in this case, the payment was made by the insurer with coverage for only this case, and the dismissal provision addresses only this case.

Defendants covert plan to keep what they considered unassailable "gotcha" language out of settlement negotiation (lest EA clarify that was not its understanding or intent), and hiding their intent to undermine the settlement by using EA's good faith settlement against it, is an unethical attempt to escape a non-dischargeable bankruptcy judgment of 10x the settlement amount. Had defendants in good faith thought the settlement agreement would release them from of a mountain of debt and the risk posed by another future judgment, they would have unquestionably made sure that it was expressly provided in the Agreement and read into the record. Defendants' silence in settlement, under the circumstances, speaks volumes as to their fraudulent intent. Defendants' argument fails as a matter of law, and in striking irony, the bad faith conduct of defendants and their counsel, in violation of the settlement agreement, expressly nullifies the very release they seek to assert.

A. <u>Defendants' Interpretation of the Release Is not Reasonable</u>

Defendants' argument and its rash of release filings are premised entirely on their interpretation of one clause, in one provision of the Agreement – an interpretation that not only does not follow the rest of the Agreement terms, it is refuted by the other Agreement terms. Specifically, Defendants assert that "including but not limited to the claims and defenses set forth in the Action", when read in isolation from the entire agreement (despite the inclusion of

the defined term Action) has no other possible meaning than: any and all claims imaginable no matter how remote from the Action are released.

To follow defendants' reasoning to its illogical conclusion, the release language is so specific and the meaning so clear, that every court is compelled to robotically enter a release of any imaginable claim or debt upon presentation of the Agreement in the present Action. EA, the party who drafted the language, contends the much more reasonable and logical meaning, especially in light of the entire agreement and the defined term, is: any and all claims that could have been brought in this Action, whether or not they were expressly set forth in the Action. Defendants' conduct of intentionally not identifying or confirming this large-impact interpretation in either the settlement negotiations or in the Agreement, indicates they *knew* EA's agreement was based on a different interpretation of the release.

B.  The Release Cannot be Interpreted in Isolation from Entire Settlement Agreement

Defendants' interpretation of the release in isolation from the entire Agreement is in clear violation of the law. The interpretation of a release is governed by the principles governing contract law cases, and the relevant Illinois precedent is clear that it is the intent of the parties that controls the scope and effect of a release, and such intent must be discerned not from the release language read in isolation, but rather—from the language used throughout the document and the circumstances of the transaction. *First Nat. Bank of Geneva v. Lively*, 211 Ill. App. 3d 1, 4-5, 569 N.E.2d 1247, 1249 (1991); *Paluch v. United Parcel Serv., Inc.*, 2014 IL App (1st) 130621, ¶ 13, 8 N.E.3d 506, 510, *reh'g denied* (Apr. 28, 2014), *as modified on denial of reh'g* (Apr. 30, 2014), *appeal denied,* 20 N.E.3d 1256 (Ill. 2014) ("[I]nstead of focusing on one clause or provision in isolation we must read the entire contract in context and construe it as a whole, viewing each provision in light of the other ones."). Particularly in the context of a very broad,

8

general release provision within a settlement agreement, it would be improper for a court to read the release in isolation and merely assume the broad release language was intended to release a specific pending case. *Chaveriat v. Williams Pipeline Co.,* No. 89 C 5841, 1992 WL 211077, at *4 (N.D. Ill. Aug. 27, 1992) (denial of defendant's motion to dismiss based on a previously signed release where the release had broad, general language, and no explicit mention of releasing the claims which existed at the time of signing the release) c*iting First Nat. Bank of Geneva v. Lively*, 211 Ill. App. 3d 1, 4-5, 569 N.E.2d 1247, 1249 (1991) (reversing circuit court's finding that the broad and general release included an unspecified and unrelated claim that existed at the time of settlement).

In the present case, the mutual release provision itself uses only very general and vague terms, mentioning "claims," though not clearly or explicitly stating which claims. While Defendants would like the court to illogically interpret this very broad release language in isolation—without giving any effect to the intention of the parties—such an interpretation is in direct conflict with Illinois precedent. *See First Nat. Bank of Geneva v. Lively*, 211 Ill. App. 3d 1, 4-5, 569 N.E.2d 1247, 1249 (1991); *Paluch v. United Parcel Serv., Inc.*, 2014 IL App (1st) 130621, ¶ 13, 8 N.E.3d 506, 510, *reh'g denied* (Apr. 28, 2014), *as modified on denial of reh'g* (Apr. 30, 2014), *appeal denied,* 20 N.E.3d 1256 (Ill. 2014); *Tri-G, Inc. v. Thomas W. Gooch & Associates*, 2014 IL App (2d) 131220-U, ¶¶ 48-55, *appeal denied sub nom. Tri-G, Inc. v. Thomas W. Gooch & Associates*, 23 N.E.3d 1207 (Ill. 2015). Indeed, if this very broad, general language were strictly construed in isolation from the rest of the settlement agreement, any claim that might have arisen from any relationship that existed at the time of signing the settlement agreement would be released, including wholly unrelated pending litigation in other courts. Relevant Illinois precedent makes clear that not only is such a conclusion impermissible under

9

the law, it is a conclusion the courts have been unwilling to make under such circumstances. *First Nat. Bank of Geneva v. Lively*, 211 Ill. App. 3d 1, 4-5, 569 N.E.2d 1247, 1249 (1991) ("Illinois courts will restrict the language of a general release to the thing or things intended to be released and refuse to interpret generalities so as to defeat a valid claim not then in the minds of the parties."); *Tri-G, Inc. v. Thomas W. Gooch & Associates*, 2014 IL App (2d) 131220-U, ¶¶ 48-55, *appeal denied sub nom. Tri-G, Inc. v. Thomas W. Gooch & Associates*, 23 N.E.3d 1207 (Ill. 2015) (disagreeing with defendants' emphasis on broad language of release that, in isolation, suggested a release of any and all claims, finding it took those provisions out of context, effectively misconstruing the parties' intent where the rest of the agreement clearly showed the parties' intent; holding "Reading the entire contract in context and construing it as a whole, we conclude that the language unambiguously shows the parties' intent that the release applies to plaintiff's [underlying claims]" rather than the present claims not mentioned anywhere in the agreement).

Under these circumstances, particularly where the release language alone is so broad and general that it does not clearly or explicitly provide any indication as to the specific claims or actions the parties intended to release, the court must discern the intention of the parties from the more specific provisions throughout the rest of the agreement. *Janowiak v. Tiesi,* 402 Ill. App. 3d 997, 1014, 932 N.E. 2d 569, 585-86 (2010) ("General words of release are restrained in effect by the specific recitals contained in the document."). In the present Action, when viewing the settlement agreement in its entirety, as required, it is clear that every material provision in the settlement agreement very clearly indicates the intention of the parties: to settle the Action and any claims related to the Action.

10

1. <u>The Terms of the Entire Agreement Refute the Defendants' Claimed Release</u>

Determining the intent of the parties and requires an analysis of the entire agreement, and every section of this Agreement clearly defines the sole purpose and scope as limited to this Action. While Defendants wish to skip to and focus exclusively on section 8, which is three pages into the Agreement, the order of the Agreement and the issues negotiated and edited are all informative of intent. At the start of the Agreement the parties to the agreement are identified to include defendant Karen Richerme, who is a party only in the Action. Each of the Recitals identify only the facts and claims asserted against the 4 defendants in the Action, the preliminary injunction entered in the Action, and the insurance- appointed defense and coverage that apply only to the Action. The permanent injunction terms, on page 2, included the assurances provided in the preliminary injunction that was entered in the Action. The parties negotiated a shorter, but still broad description of injunction prohibiting the conduct asserted in the Action. The related Liquidated Damages provision, to protect EA from Defendants with a sum certain ($250,000) in damages for any future violation of the injunction in this Action. The Payment negotiated and made under the Agreement was from the Insurer who was involved in only the Action, but had no responsibility or authority at the time to settle other cases. The timing and terms of the Dismissal were expressly provided, but only in regards to the Action. The Choice of Law and Forum Selection provision clearly follows the forum in which the Action was filed (and defendants clearly breached this provision by seeking to enforce the Agreement through a state court filing). At this point in the Agreement, with the specific issues in the Action addressed, the Agreement begins the "boilerplate" provisions, including Section 6.Geographic Scope and Section 7. Final Agreement provisions. Section 8 is where the Mutual Release provision appears in the Agreement. Given the defendants did not plead a defense, provide any proper responses to

written discovery or produce any documents before the close of discovery, there was a great potential of unknown additional claims that EA could assert, such as the very likely possibly that defendants sent the same or similar defamatory letter to other EA customers. That fact, coupled with the fact that insurance coverage was involved, lead EA to incorporate an expansive release for all claims or causes of action related to the Action, whether or not they were expressly set forth in the Action. The release, however, is not absolute, they contain an express limitation at the end of Section 8b, providing that in the event a party breaches the Agreement "***in any respect***" the releases in the breaching parties' favor "***shall be null and void.***" Of the remaining standard contract language provisions in the agreement, we note: Section 1- Modification, which anticipates later modification of the Agreement; Section 14 - Good Faith Negotiations, which premises the Agreement of the parties' good faith throughout the negotiations; Section 15 – Construction/Severability, which anticipates a challenge to a provision that would not negate the other provisions. When considered as a whole, the settlement agreement signed by the parties applies exclusively to the Action, was intended to resolve all issues related thereto, whether known or unknown and whether expressly raised in the Action or not. The Agreement is premised on good faith negotiations and anticipates challenges to and modification of the Agreement provisions, with the important exception that the releases are null and void upon breach of the Agreement in any manner.

2.  The Record of the Settlement Conference Refute the Defendants' Claimed Release

While the parties' intent to resolve only the Action is clear from the settlement agreement, the Court's efforts to put the terms of agreement on the record further exposes defendants feigned good faith participation in the settlement conference. Defendants' release filings show they believed (erroneously) that the release language would allow them to get out

12

from under $700,000+ in non-dischargeable judgment debt (that included attorney fees and sanctions for litigation abuses) and prevent another eminent judgment in the state theft of trade secrets case, so long as the release language was not analyzed or discussed and no record was made as to the parties' understanding of its meaning. When EA's counsel read the agreement terms as to payment, liquidated damages and injunction into the record, the defendants all agreed on the record without addition or qualification when questioned by the Court as to whether the understood the agreement and its repercussions for defendants. What defendants made sure to do was to conceal the repercussions they had planned for EA.

C.  Defendants' Violations Nullifies the Release

Defendants and their counsel's duplicitous conduct at the settlement conference, which continued after and up to the time dismissal was entered, was to appear as if they were negotiating the release of this Action in good faith, but all the while planning to reap a windfall benefit at the expense of EA. Defendants insisted on the signing of a Working Draft in which only 3 provisions were discussed and contained what they believed to be their "silver bullet" against EA. Defendants and counsel also ensured the Agreement would be non-confidential so they could attach it to their numerous planned filings. Defendants knew that EA never anticipated, let alone agreed, to defendants' release claim, rather they sought to avoid negotiating or clarifying the release, lest it be rejected on the record by EA. They also knew the Agreement terms did not address anything other than the present Action.

Defendant didn't care about good faith negotiations, intent of the parties or a meeting of the minds – they cared only about getting that release language they were sure was would undermine the Settlement and EA. In doing so, Defendants violated the crucial good faith obligation raised by this Court and an express term of the Agreement (Section 14). Defendants

again violated the express terms of Section 5 of the Agreement when they their motion in state court seeking enforcement of the Agreement. Finally, the defendants violated the terms of the dismissal by ignoring the parties' agreement to retain jurisdiction with this Court and filed their second release motion with yet another court. Any one of these violations, alone, triggers the nullification of the release for Defendants, as provided in Section 8b.

D.  Even if the Settlement Agreement Terms had Unambiguously Supported a Wholesale Release, Rescission is Warranted

While it is incomprehensible to imagine how the language of the release, when taken in the context of the entire settlement agreement, as it must, could be found to unambiguously support the limitless release defendants seek, the Court has the authority, and the duty, to rescind the agreement where there is has been bad faith or fraud involved.

Fraud in the making of a contract which merits the remedy of rescission includes both the concealment of a material fact and where one party enters into a contract reasonably relying on the other party's innocent misrepresentation of a material fact. *Illinois State Bar Ass'n Mut. Ins. Co. v. Coregis Ins. Co.*, 355 Ill. App. 3d 156, 290 Ill. Dec. 394, 821 N.E.2d 706 (1st Dist. 2004). Here, either the Defendants intentionally concealed the material fact that they were intending to negotiate a release for claims outside of the Action and Recitals, or the Defendants innocently misrepresented that they were intending to negotiate a release for claims outside of the Action and Recitals. If the latter, EA reasonably relied on the innocent misrepresentation based on the Defendants' glaring failure to attempt to negotiate for those additional releases in any way. EA came to the negotiation, in good-faith, to attempt to settle the defamation claim only. *See* Exhibit C, the Declaration of Michael Wern ("Wern Decl.") at ¶ 1. Further, Defendants' insurance would not have participated, or volunteered to pay for damages, in any settlement

14

discussions for the other cases, such as the bankruptcies. Thus, EA may choose to rescind the contract for the fraud. *Cockrum v. Keller*, 190 Ill. App. 587, 1914 WL 3149 (4th Dist. 1914).

E. <u>There was No Meeting of the Minds On the Scope of Agreement</u>

EA negotiated in good faith and agreed to the express terms of the Agreement, as EA reasonably understood them. EA understood the settlement reached was releasing all the claims it asserted in this Action, and any and all unknown claims that could have been brought in connection with this Action. Wern Decl. at ¶ 1. EA never agreed, and never would agree, to relinquish or release its right to collect on the defendants' $720,000 non-dischargeable judgment debt owed to EA under the terms of the Agreement in this Action. Wern Decl. at ¶¶ 8-9. EA never agreed, and never would agree, to dismiss or release EA's claims asserted against defendants in the state trade secret case under the terms of the Agreement in this Action. Wern Decl at ¶¶ 4-5. There was nothing raised during the settlement negotiations, nor in the Agreement terms that would have led the Parties to understand that the settlement of this Action would have any impact or repercussions on unrelated cases or judgments against the Defendants. Wern Decl. at ¶¶ 3-10. It was EA's understanding that the parties agreed to settle this Action, alone, for the $75,000 payment from defendants' insurer. *Id.* If the settlement agreement EA entered, in good faith, resulted in the release of the $720,000 non-dischargeable judgment owed to EA, and prevented EA from obtaining injunctive and other relief for Defendants theft of EA trade secrets, it would be contrary to what EA understood when the Agreement was signed and would have a substantial negative effect on EA and its business. Wern Decl. at ¶¶ 10-15.

The rule of law requires there to be a meeting of the minds to have a valid and enforceable agreement. *City of Chicago v. Ramirez*, 366 Ill. App. 3d 935, 946, 852 N.E.2d 312, 323 (2006) (a settlement agreement requires a meeting of the minds between the parties). Equity

demands that a party operating in bad faith not be rewarded for its deception and a party acting in good faith not be punished as a result of that deception. Defendants and their counsel concealed the issue of release from discussion or negotiation, even when expressly asked prior to dismissal. As a result, EA did not, and could not, have reached a meeting of the minds with defendants and agreement was not reached.

F.     Fees, Costs and Sanctions are Warranted

The settlement agreement expressly provides, in Section 5, for EA to recover its attorney fees and costs incurred in connection with this Action to enforce the Agreement. That recovery is especially warranted here, where immediate enforcement by EA was required due to the bad faith complicity of defendants, insurance-appointed counsel and counsel for the insurer, for bad faith settlement tactics, in filing with other courts (while never disclosing to those courts the retained jurisdiction of this Court) an alleged "agreed" release that would amount to a windfall of ill-gotten gains for defendants.

The defendants and their insurance-appointed attorney and insurance attorney cooperated in hiding the defendants' reliance on the release from the Court and EA, were evasive when explicitly informed that EA did not agree prior to filing the dismissal, and sought to have the Agreement enforced by two other Courts, despite the express agreement for this Court to retain jurisdiction for just such a purpose. Defendants, their insurance-appointed counsel and counsel for the insurer have all cooperated to flagrantly abuse the settlement conference, mislead the Court and EA, and make a mockery of the agreement they professed to reach with EA by seeking to have defendants profit and EA pay for the settlement of defendants' blatant defamation.   If defendants, their insurance-appointed counsel and insurance counsel are not held accountable for their duplicity and bad faith, no party would ever agree to submit to settlement.

WHEREFORE, EA respectfully requests that this Court:

1) Nullify the release as to Defendants, pursuant to Section 8(b) of the Agreement;

2) In the alternative, nullification of the entire Agreement, pursuant to Section to 8(b) of the Agreement because of Defendants and counsels fraud and misrepresentation or because of the lack of mutual assent since there was no meeting of the minds;

3) An award of attorney fees and costs pursuant to Section 5 of the Agreement;

4) Sanctions against Defendants, Defendants' insurance appointed counsel, and/or insurance counsel for bad faith and fraud; and

5) Any further relief in law or equity the Court deems just.

                Respectfully Submitted,

                ENGINEERED ABRASIVES, INC.

                /s Joan L. Long/

Joan L. Long
Grant L. Peters
Barnes & Thornburg LLP
One North Wacker Drive, Suite 4400
Chicago IL  60606
(312) 357-1313

**CERTIFICATE OF SERVICE**

I, Joan L. Long, an attorney, certify that the foregoing document was filed through the Court's ECF system on July 1, 2016, and that all parties of record will be electronically notified and will be able to access the foregoing document through the ECF system.

<u>/s/ Joan L. Long</u>