# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ENGINEERED ABRASIVES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.: 1-15 CV 06983 |
| ) | |
| AMERICAN MACHINE PRODUCTS & ) | |
| SERVICE, INC., EDWARD RICHERME, ) | |
| KAREN RICHERME and EDWARD C. ) | |
| RICHERME, ) | |
| ) | |
| Defendants. | |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT AND FOR SANCTIONS

Plaintiff offered Defendant a mutual release. Defendants accepted. Plaintiff then reconsidered and decided it didn't like the release it offered to Defendants and wants to change the terms of their agreement. Plaintiff now asks this Court to invalidate the agreement under the guise of enforcing the agreement. This is entirely improper.

As an initial matter, this Court lacks jurisdiction to grant the relief requested by Plaintiff. Plaintiff's motion is nothing more than an improper attempt to have this Court interpret and modify an unambiguous contract in the guise of a request to enforce a settlement agreement. There is nothing for this Court to enforce and, as a result, this Court does not have any jurisdiction to grant the relief requested by Plaintiff. Moreover, even if this Court had jurisdiction to interpret the contract, which it does not, the contract is unambiguous and must be enforced as written. Finally, Plaintiff's request for sanctions is made in violation of the requirements of Rule 11 of the Federal Rules of Civil Procedure and is, in any event, without any merit whatsoever.

## I. This Court Lacks Jurisdiction To Interpret The Settlement Agreement.

There exists no legal basis for this Court to interpret the Settlement Agreement. Knowing that, Plaintiff attempts to skirt the issue and couch its request by asking that this Court "enforce" the terms of the Settlement Agreement entered into between Plaintiff and Defendants on June 2, 2016. This begs the question, what term of the agreement does Plaintiff seek to enforce? The Settlement Agreement required Defendants to pay Plaintiff $75,000.00 and release all claims they had against Plaintiff. There is no dispute that Defendants, through their insurer, paid the $75,000.00, and that they released any claims they had against Plaintiff. Defendants also agreed to the entry of a permanent injunction. There is no allegation that any of the Defendants violated the injunction. What then, does Plaintiff seek to enforce? Nothing. What Plaintiff impermissibly asks this Court to do is, under the guise of "enforcement", to "weigh the critical determination of the parties' intent and agreement" and interpret the unambiguous language of the mutual releases drafted by Plaintiff's counsel. Motion at p. 6. This is impermissible.

Plaintiff's assertion that this Court has jurisdiction to interpret the Settlement Agreement because Defendants breached the terms of the agreement is ludicrous. Plaintiff alleges that Defendants "breached at least two terms of the settlement agreement" requiring either that Plaintiff's release of Defendants be nullified or, in the alternative, that the entire Settlement Agreement be nullified. Plaintiff alleges that Defendants breached the Settlement Agreement by failing to negotiate in good faith and by bringing motions in two other matters seeking dismissal and release of a prior judgment based on the Settlement Agreement. Both arguments are silly as will be shown below. Nevertheless, even if true, these purported breaches do not bestow jurisdiction upon this Court to interpret the terms of the Settlement Agreement.

Similarly, the parties' consent to the jurisdiction of this Court in this matter is simply that; consent to proceeding before this Court as opposed to the District Court to enforce the terms of the agreement. As the parties stated on the record on June 2, 2016, they agreed to this Court's "jurisdiction from now on in this case." Report of Proceedings, June 2, 2016, p. 9, a copy of which is attached hereto as Exhibit A. This was confirmed in the dismissal order entered by this Court wherein "Magistrate Judge Michael T. Mason will retain jurisdiction for the enforcement of the settlement agreement terms." Order of June 14, 2016, at par. 3, a copy of which is attached hereto as Exhibit B. As noted above, Plaintiff does not seek enforcement of the Settlement Agreement, but interpretation.

Plaintiff's request that this Court interpret the Settlement Agreement is improper as there is no pleading properly before this Court seeking a declaration as to the meaning and effect of the Settlement Agreement or rescission of that agreement. Accordingly, this Court lacks the jurisdiction to grant the relief requested by Plaintiff.

**II.     There Is Nothing To Enforce As Defendants Complied With All Terms And Conditions Of The Settlement Agreement.**

The parties met before this Court on June 2, 2016, for a settlement conference. After agreeing to settle for payment of $75,000 and entry of a permanent injunction, Plaintiff's counsel, for the first time, presented Defendants' counsel with the five-page written Settlement Agreement they drafted. As discussed above, the Settlement Agreement required Defendants, through their insurer, to pay $75,000.00 to Plaintiff, which they did. The proposed Settlement Agreement also offered numerous additional terms and conditions not previously discussed by the parties. As Plaintiff notes in its Motion, the Settlement Agreement was then "negotiated and revised during the settlement conference." Motion at p. 3.

3

Included in the terms of the Settlement Agreement offered by Plaintiff was a mutual release.[1] Plaintiff now asserts that Defendants' acceptance of the mutual release offered by Plaintiff in paragraph 8 of the Settlement Agreement without modification is evidence of "bad faith" negotiations warranting rescission of the release and/or Settlement Agreement. Plaintiff's argument that Defendants' acceptance of Plaintiff's offer demonstrates "bad faith" negotiating is both incomprehensible and absurd. Acceptance of an offer cannot be equated with bad faith negotiating. Moreover, the Settlement Agreement drafted by Plaintiff itself acknowledges that the parties engaged in good faith negotiations. <u>Settlement Agreement</u> at par. 14.

Plaintiff's second argument is equally inane. Plaintiff apparently believes that Defendants breached the Settlement Agreement by bringing motions in (1) the Circuit Court for Will County, Illinois seeking the dismissal of Plaintiff's pending case against Defendants and (2) before Judge Ellis in the United States District Court for the Northern District of Illinois to release the judgment previously entered by her against Defendants based upon the mutual release in the Settlement Agreement. The basis for Plaintiff's claim is its mistaken belief that only this Court may read and act upon the mutual releases contained in the Settlement Agreement. Plaintiff's reasoning is illogical and unsupported by law or fact.

As set forth above, this Court retained jurisdiction to enforce the terms of the Settlement Agreement. There is nothing preventing Defendants from taking steps to carry out the intent and effect of the Settlement Agreement; precisely what they did by filing the two motions. Defendants could have demanded that Plaintiff execute stipulations for the dismissal of the state court action and to release the judgment entered by Judge Ellis and, when Plaintiff refused, brought a motion before this Court to enforce paragraph 9 of the Settlement Agreement which

---

[1] Defendants had not made any claim for damages against Plaintiff at the time of the settlement conference; what then were Defendants releasing if not claims outside of this litigation?

4

required Plaintiff to do so, but this would have done nothing but increase the costs to all parties and wasted this Court's time. Instead, Defendants simply presented the Settlement Agreement containing the mutual releases to the state court and Judge Ellis and requested that the courts effectuate the agreement of the parties.

Plaintiff has not, nor can it, direct the Court to any provision of the Settlement Agreement breached by Defendants. Defendants complied with each and every term and condition of the Settlement Agreement; it is Plaintiff who has failed to comply with its obligations by bringing its frivolous motion and objecting to Defendants' motions in state court and the prior federal case.

### III. The Settlement Agreement Contains An Unambiguous Mutual Release That Must Be Enforced As Written.

Ignoring for the moment that this Court lacks jurisdiction to evaluate and interpret the terms of the Settlement Agreement, Plaintiff argues that this Court should ignore the unambiguous language of the Settlement Agreement and use parol evidence to determine the intent of parties in entering into the agreement. The law prohibits such an analysis.

#### A. The Settlement Agreement is a contract governed by Illinois law.

The Settlement Agreement is a contract governed by Illinois law. *See* Cannon v. Burge, 752 F.3d 1079, 1088 (7th Cir. 2014)(citing Cushing v. Greyhound Lines, Inc., 991 N.E.2d 28, 92 (IL 1st Dist. 1992)). *See also* Heard v. Tilden, 809 F.3d 974, 979 (7th Cir. 2016)(stating "A release is a contract, and thus, even though the settlement occurred in litigation brought in federal court, Illinois law governs the effect of the release at issue here.")(citations omitted.)

#### B. Illinois law requires that where an agreement is clear it must be enforced as written as a matter of law.

This Court may not look to extrinsic or parol evidence to determine the intent of the parties in entering into the Settlement Agreement. The Illinois Supreme Court held that "[t]he

5

intention of the parties to contract must be determined from the instrument itself, and construction of the instrument where no ambiguity exists is a matter of law." Farm Credit Bank of St. Louis v. Whitlock, 144 Ill.2d 440, 447 (Ill. 1991)(citations omitted.) "Where a written agreement is clear and explicit, a court must enforce the agreement as written." Rakowski v. Lucente, 104 Ill.2d 317, 323 (Ill. 1984). "Both the meaning of the instrument, and the intention of the parties must be gathered from the face of the document without the assistance of parol evidence or any other extrinsic aids." Id.

### C. The Mutual Release in the Settlement Agreement is clear and unambiguous.

#### 1. The terms of the mutual release in the Settlement Agreement are not ambiguous.

The terms of the mutual release are clear and unambiguous. "A contract will be considered ambiguous if it is capable of being understood in more sense than one." Farm Credit Bank of St. Louis at 447 (citations omitted.) The terms of a contract are not "ambiguous simply because the parties do not agree upon its meaning." Reynolds v. Coleman, 173 Ill. App. 3d 585, 593 (Ill. 1st Dist. 1988)(citations omitted); *see also* Paluch v. United Parcel Service, 8 N.E.2d 506, 510 (Ill. 1st Dist. 2014)(stating the rule of law that "[t]he mere fact that the parties disagree over the contract's interpretation does not establish ambiguity.)(citation omitted.) "A contract term is ambiguous if it can reasonably be interpreted in more than one way due to the indefiniteness of the language or due to it having a double or multiple meaning." William Blair and Co. v. Fi Liquidation Corp., 358 Ill. App. 3d 324 (Ill. 1st Dist. 2005)(further stating that "[a] contract is not ambiguous . . . if a court can ascertain its meaning from the general contract language.") *See also* Hampton v. Ford Motor Co., 561 F.3d 709, 714 (stating that "an ambiguous contract is 'an agreement obscure in meaning, through indefiniteness of expression, or having a double meaning'" (citation omitted.))

The Mutual Release term of the Settlement Agreement drafted by counsel for Plaintiff is clear and unambiguous in its meaning and scope. The provision provides as follows:

> 8. <u>Mutual Release</u>.
>
> a. EA, on behalf of itself, its parents, subsidiaries, affiliates, officers, directors, employees, agents, successors and assigns, hereby releases Defendants, their subsidiaries, affiliates, officers, directors, employees, agents, attorneys, shareholders, successors and assigns, of and from any and all rights, claims, debts, demands, acts, agreements, liabilities, obligations, damages, costs, attorneys' fees, expenses, actions, and/on causes of action of every nature, character and description, whether known or unknown, suspected or unsuspected, which it ever had, now has, or may hereafter claim to have by reason of any matter, cause or circumstance whatsoever arising or occurring prior to and including the date of the Agreement, including but not limited to the claims and defenses set forth in the Action.
>
> b. Defendants, each on behalf of itself, its subsidiaries, affiliates, licensees, officers, directors, employees, agents, successors and assigns, hereby releases EA, its parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, shareholders, successors and assigns, of and from any and all rights, claims, debts, demands, acts, agreements, liabilities, obligations, damages, costs, attorneys' fees, expenses, actions, and/or causes of action of every nature, character and description, whether known or unknown, suspected or unsuspected, which it ever had, now has, or may hereafter claim to have by reason of any matter, cause or circumstance whatsoever arising or occurring prior to and including the date of the Agreement, including but not limited to the claims and defenses set forth in the Action. The releases granted herein are expressly conditioned upon full performance of all the obligations under the Agreement. If any of the Parties hereto breach the Agreement in any respect, the releases in their favor shall be null and void as though it had never taken effect. This release does not extend to any obligations incurred under the Agreement.

<u>Settlement Agreement</u> at par. 8

As can be seen from the language of the release, Plaintiff EA released Defendants from any and all "claims, **debts**, demands, acts, agreements, **liabilities**, **obligations**, **damages**, **costs**, **attorneys' fees**, expenses, **actions**, **and/on causes of action of every nature, character and description** . . . ." <u>Id.</u> (emphasis supplied.) This clear and explicit language includes both the state court action ("**actions**, **and/on causes of action of every nature, character and description**") and the judgment entered by Judge Ellis in the prior federal case ("**debts** . . . **liabilities**, **obligations**, **damages**, **costs**, **attorneys' fees**"). The release by Plaintiff goes on to

7

state that the release "include[es], but [is] not limited to the claims and defenses set forth in the Action." Id.

Notably there are no actions, other than the one before this Court and the state court case, between the parties to the Settlement Agreement. What "actions" or "causes of action of every nature, character and description", therefore, could Plaintiff be releasing but the state court action? None. The plain language of the mutual release clearly contemplates the release of the state court action by Plaintiff.

Similarly, the only "debts . . . liabilities, obligations, damages, costs, attorneys' fees" owed by Defendants to Plaintiff arise out of the prior federal case. Judge Ellis, in her Opinion and Order of March 18, 2015, entered judgment in favor of Plaintiff for monetary **damages**; **attorneys' fees**; and **costs**. A copy of Judge Ellis' March 18, 2015 Opinion and Order is attached hereto as Exhibit C. These are the only damages, attorneys' fees and costs owed by Defendants to Plaintiff; what other damages, attorneys' fees and costs could the mutual release have released if not these damages, attorneys' fees and costs?

Plaintiff argues that, as the party who drafted the Settlement Agreement and mutual release, that the intent of the mutual release only released "any and all claims that could have been brought in this Action, whether or not they were expressly set forth in the Action." Motion at p. 8. This is problematic for Plaintiff in several respects. First, if Plaintiff intended the release to mean what it now claims, it should have used the language it now asks the Court to read into the agreement. Second, it requires the Court to ignore the actual language of the release as discussed above. And third, application of the long followed rule of *contra proferentem* requires that ambiguities be construed against the party who drafted the agreement; in this case Plaintiff.

*See e.g.* In re Marriage of Best, 228 Ill.2d 107 (2008); Henke v. Gunzenhauser, 195 Ill. 130 (1902).

There is no need to consider parol or extrinsic evidence, however, as the language of the mutual release is clear, explicit and unambiguous.

> **2. The language of the release is effective as to the state court case and federal judgment as Plaintiff had actual knowledge of them at the time it entered into the Settlement Agreement.**

In asking the Court to ignore the plain language of the release, Plaintiff asserts that the Court must read the release language in the context of the entire Settlement Agreement. Plaintiff then disingenuously argues "the mutual release provision itself uses only very general and vague terms, mentioning 'claims,' though not clearly or explicitly stating which claims." Motion at p. 9. In doing so Plaintiff attempts to mislead this Court by intentionally ignoring the additional language it included in the release that clearly denotes the intent to release both the state court case and the prior federal judgment. The release plaintiff drafted was not limited to "claims" as it would have this Court believe, but "claims, debts, demands, acts, agreements, liabilities, obligations, damages, costs, attorneys' fees, expenses, actions, and/on causes of action of every nature, character and description . . . ."

In support of its argument Plaintiff repeatedly directs the Court to Tri-G, Inc. v. Thomas W. Gooch & Assoc., 2014 IL App (2d) 131220-U. The Illinois Appellate Court's order in Tri-G, however, was filed under Illinois Supreme Court Rule 23 and, pursuant to that rule, may not be cited as precedential. Illinois S.Ct. Rule 23.

In addition to the improperly cited to Tri-G order, Plaintiff directs this Court to the general rule that "[w]here the releasing party was unaware of other claims, Illinois case law has restricted general releases to the specific claims contained in the release agreement." Farm

Credit Bank of St. Louis v. Whitlock, 144 Ill.2d 440, 447 (Ill. 1991)(citations omitted.) In doing so, Plaintiff fails to apprise the Court of the exception to that general rule; an exception clearly applicable in this action.

The exception Plaintiff failed to mention provides that in cases "where both parties were aware of an additional claim at the time of signing the release, courts have given effect to the general release language of the agreement to release that claim as well." Id. (citing to Frank Rosenberg, Inc. v. Carson Pirie Scott & Co., 28 Ill.2d 573, 578 (1963); Perschke v. Westinghouse Electric Corp., 111 Ill. App. 2d 23, 31 (1969); Cwik v. Condre, 4 Ill. App. 2d 380, 383 (1954).) This rule has been followed by the Federal Courts as well. *See* Hampton v. Ford Motor Co., 561 F.3d 709, 714 (quoting Fair v. Int'l Flavors & Fragrances, Inc. for the rule that "[a] general release typically covers 'all claims of which a signing party has actual knowledge or that he could have discovered upon reasonable inquiry.'" 905 F.2d 1114, 1116 (7th Cir.1990); *see also* Wagner v. NutraSweet Co., 95 F.3d 527, 533 (7th Cir.1996)).

In this instance it is undisputed that both Plaintiff, through its President Mr. Wern, and its counsel, were aware of both the state court action and the prior federal judgment. *See* Complaint at par. 20; Wern declaration. As Plaintiff was well aware of the state court action and the prior federal judgment, the release is clearly applicable to both of these matters.

### D. Plaintiff's argument that only certain terms of the Settlement Agreement have meaning while others are merely meaningless boilerplate is nonsensical.

Plaintiff incomprehensibly and without any logical or legal support argues that the only terms of the Settlement Agreement with any import are those about which it apparently cares. Plaintiff asserts that the only meaningful provisions of the Settlement Agreement are paragraphs 1 through 4[2]. Motion at p. 11. The remaining provisions are described as mere boilerplate

---

[2] Respectively headed Permanent Injunction, Payment, Dismissal and Choice of Law and Forum Selection.

(paragraphs 6, 7, 10, 14 and 15)[3] or entirely ignored by Plaintiff as mere surplusage (paragraphs 9, 11-13, 16-18.)[4] Id. at p. 11-12. Plaintiff directs the Court to no authority or reasoning behind its claim as to which paragraphs of the Settlement Agreement are to be followed and which are to be ignored. Of course, Plaintiff's entire argument is absurd and contradictory to Illinois law, which requires a Court to interpret a contract in a manner that gives meaning to all of its terms. *See e.g.* Thompson v. Gordon, 241 Ill.2d 428, 442 (2011)(stating the rule that "[a] court will not interpret a contract in a manner that would nullify or render provisions meaningless, or in a way that is contrary to the plain and obvious meaning of the language used. Further, when parties agree to and insert language into a contract, it is presumed that it was done purposefully, so that the language employed is to be given effect." (citations omitted.)) *See also* River Plaza Homeowner's Ass'n v. Healey, 389 Ill. App. 3d 268, 277 (Ill. 1st Dist. 2009)(stating "[w]hen a court interprets a contract, 'meaning and effect must be given to every term and provision, if possible, since it is presumed that every clause in the contract was inserted deliberately and for a purpose and that the language was not employed idly.'" (citations omitted.))

Plaintiff then makes the bizarre claim that the mutual release was broadly written because Plaintiff's didn't believe Defendants had a proper defense and "there was a great potential of unknown additional claims that EA could assert, such as the very likely possibly (*sic*) that defendants sent the same or similar defamatory letter to other EA customers . . . coupled with the fact that insurance coverage was involved." Motion at p. 11-12. This is absolute gibberish and makes no sense whatsoever. Unlike Plaintiff's Motion, the terms of the mutual release were clearly written.

---

[3] Respectively headed Geographic Scope, Final Agreement, Modification, Good Faith Negotiations and Construction/Severability.
[4] Respectively Further Assurances, Headings, Binding Upon Affiliates and Successors in Interest, Counterparts, Waiver, Authorized Signatures and Fees.

**E. The Court may not employ parol evidence to interpret the Settlement Agreement. Nevertheless, the record from the June 2, 2016, settlement conference confirms the scope of the settlement.**

**1. The Court may not rely on parol evidence to interpret the Mutual Release in the Settlement Agreement.**

As set forth in the preceding sections, the mutual release in the Settlement Agreement is clear and unambiguous. "[W]here a written agreement is clear and explicit, a court must enforce the agreement as written without the assistance of parol evidence or any extrinsic aids." Cannon v. Burge, 752 F.3d 1079, 1088 (7th Cir. 2014)(citing Hurd v. Wildman, Harrold, Allen & Dixon, 303 Ill. App. 3d 84 (Ill. 1st Dist. 1999) and stating further that "where there is no ambiguity in the language of a settlement agreement, the determination of the intent of the parties is governed by the contract language alone.)(citing Haisma v. Edgar, 218 Ill. App. 3d 78 (Ill. 1st Dist. 1991.)) This Court may not, therefore, employ parol evidence to ascertain the intent of the parties in entering into the Settlement Agreement.

**2. The record of the settlement conference affirms that the agreement reached by the parties included all of the terms of the Settlement Agreement.**

At the conclusion of the settlement conference the Court asked Plaintiff's counsel to "state her understanding of the terms and conditions of this agreement on behalf of the plaintiff, please." Exhibit A, p. 4, ln. 19-21. After generally outlining the payment, injunction and liquidated damages provisions Ms. Long explicitly incorporated by reference the terms of the written Settlement Agreement as memorializing the entire agreement stating "As outlined in the written agreement signed by all parties here today." Id. at p. 5, ln. 9-10. The Court then addressed Defendants and stated:

> THE COURT: You heard what the plaintiffs had said the terms and conditions are. And there is a written document to reflect other conditions of this which you – all parties have agreed to. Do you have any questions about any of the terms or conditions?

>           MR. KITZINGER:     I do not.
>
>           THE COURT:         Do you agree to these terms and conditions?
>
>           MR. KITZINGER:     We do.

Exhibit A, p. 7, ln. 2-11.

In open court Plaintiff stated that the terms of the agreement were set forth in the Settlement Agreement. Defendants agreed. From this exchange, Plaintiff claims that the intent of the parties was something other than what Plaintiff's wrote in the mutual release section of the Settlement Agreement. Apparently in Plaintiff's world white is black, and black is white. In our world, however, the terms are clear and set forth in the release and include the release of the state court action and prior federal judgment.

### F. This Court lacks jurisdiction to rescind the Settlement Agreement and there is no basis to do so in any event.

#### 1. This Court does not have jurisdiction to rescind the Settlement Agreement.

Plaintiff asserts without support that this Court "has the authority, and the duty, to rescind the agreement where there is has (*sic*) been bad faith or fraud involved." Motion at p. 14. As with many of its arguments, Plaintiff provides the Court with no authority in support of this proposition. As the Court is aware, there is no complaint before it seeking rescission. This Court's authority is limited to enforcing the settlement agreement, not rescinding it.

#### 2. There is no basis to rescind the Settlement Agreement.

Plaintiff believes that by accepting its offer Defendants engaged in bad faith negotiations or committed fraud. This is preposterous! Plaintiff claims that this Court should rescind the Settlement Agreement because of Defendants' bad faith in negotiating the terms of the agreement or fraud. Defendants neither engaged in bad faith nor committed fraud.

It is astounding (and probably a violation of FRCP 11) for Plaintiff to claim that "Defendants intentionally concealed the material fact that they were intending to negotiate a release for claims outside of the Action and Recitals, or the Defendants innocently misrepresented that they were intending to negotiate a release for claims outside of the Action and Recitals." Motion at p. 14. What makes this claim incredible is the simple fact that Plaintiff presented Defendants with the Settlement Agreement near the end of the settlement conference offering, among other things, a mutual release. Defendants accepted Plaintiff's offer regarding the mutual release. In what way could this ever evidence bad faith or fraud?

Moreover, "[i]n order to prove fraud by the intentional concealment of a material fact, it is necessary to show the existence of a special or fiduciary relationship, which would raise a duty to speak." Thornwood, Inc. v. Jenner & Block, No. 1-01-1767 (Ill. App. 11/10/2003)(quoting First Midwest Bank, N.A. v. Sparks, 289 Ill. App. 3d 252, 260 (1997). There is no question that Plaintiff and Defendants were not in a special or fiduciary relationship. Defendants, therefore, had no duty to explain to Plaintiff the scope of Plaintiff's offer of the mutual release.

Moreover, to allege a cause of action for fraudulent inducement in Illinois a Plaintiff must demonstrate:

> A representation in the form of a statement of a material fact, made for the purpose of inducing a party to act; it must be false and known to the party making it to be false . . . and the party to whom it is made must be ignorant of its falsity, must reasonably believe it to be true, must act thereon to his damage, and in so acting must rely on the truth of the statement.

Cannon v. Burge, 752 F.3d 1079, 1092 (7th Cir. 2014)(citing Wilkinson v. Appleton, 28 Ill.2d 184 (1963).

Moreover, "a person may not enter into a transaction with his eyes closed to available information and then charge that he has been deceived by another. Id. (citations omitted.) Needless to say, Plaintiff's claim of fraud in the inducement fails on numerous counts, the least

of which is that Defendants never made any representations regarding the mutual release; they simply accepted Plaintiff's offer.

### G. Plaintiff's unilateral mistake as to the scope of the mutual release is not a valid ground for setting aside the Settlement Agreement.

In its final attempt to avoid the effect of the mutual release Plaintiff argues that there was no meeting of the minds on the scope of the Settlement Agreement. Motion at p. 15. Plaintiff asserts that if it understood the scope of the release it never would have entered into the agreement it drafted. Id. Plaintiff then fantastically claims that "Defendants and their counsel concealed the issue of release from discussion or negotiation . . . ." Motion at p. 16. For the reasons set forth in the preceding section, this argument is simply absurd.

More importantly, "[a] unilateral or self-induced mistake is not a valid ground for setting aside a clear and unambiguous release. To accomplish that, a mutual mistake, material to the transaction and affecting its substance, must clearly and convincingly be established." Rakowski v. Lucente, 104 Ill.2d 317, 324 (Ill. 1984)(citing to Hoops v. Fitzgerald, 204 Ill. 325, 331 (1903); Ogren v. Graves, 39 Ill. App. 3d 620, 622 (1976)). *See also* M. Murphy v. S-M Delaware, Inc., 95 Ill. App. 3d 562, 567 (Ill. 1st Dist. 1981)(holding that a unilateral or self-induced mistake is insufficient to set aside a release.) This rule has been followed by federal courts as well. *See* Cannon v. Burge, 752 F.3d 1079, 1092 (7th Cir. 2014)(citing to Rakowski for the rule that "[a]ny unilateral mistake about the effect of an unambiguous release was not a sufficient ground to set aside the release.")

When presented with the Settlement Agreement at the settlement conference Defendants took the time to read Plaintiff's offer of settlement. Defendants made no mistake in entering into the Settlement Agreement and understood the scope and meaning of the mutual release. Plaintiff presents no evidence to the contrary, much less the requisite clear and convincing evidence. If

Plaintiff did not understand what it wrote and offered when it presented the Settlement Agreement containing the mutual release to Defendants, it was a unilateral mistake by Plaintiff that cannot serve as a basis for voiding the Settlement Agreement.

**IV.     Plaintiff's request for sanctions violates FRCP 11.**

Plaintiff requests that this Court sanction Defendants, Defendants' counsel, and counsel for Defendants' insurer for seeking to effectuate the terms of the Settlement Agreement. Ignoring the absence of merit to Plaintiff's request, Plaintiff's motion violates FRCP 11. Rule 11 requires that:

> A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.

Plaintiff violated the provisions of the rule by incorporating its sanctions motion into its "Motion to Enforce" and by filing it and presenting it to this Court before providing Defendants an opportunity to withdraw or correct the allegedly improper paper, claim, defense or contention.

**V.     Conclusion**

"Public policy favors the settlement of claims, and it is important that claims, once fairly resolved, not be resurrected." Cannon v. Burge, 752 F.3d 1079, 1092 (7th Cir. 2014). The parties to this matter settled this case after engaging in good faith negotiations with the help of this Court. This Court lacks the jurisdiction to interpret, modify, nullify or rescind the Settlement Agreement. That Plaintiff now regrets entering into the settlement or made a unilateral mistake in drafting and offering the mutual release to Defendants is not a basis to reform or rescind the clear, explicit and unambiguous Settlement Agreement entered into between the parties. This Court should deny Plaintiff's Motion to Enforce Settlement Agreement and for Sanctions.

WHEREFORE, Defendants, American Machine Products & Service, Inc., Edward Richerme and Edward C. Richerme, pray that this Honorable Court deny Plaintiff's Motion to Enforce Settlement Agreement and for Sanctions and award them all fees and costs as permitted by law and for any and all further relief this Court deems proper and just.

Respectfully Submitted,

s/Stanley A. Kitzinger_____
Stanley A. Kitzinger
One of the attorneys for Defendants

Stanley A. Kitzinger
Cornelius E. McKnight
Nathan P. Karlsgodt
McKnight, Kitzinger & Pravdic, LLC
117 North Jefferson Street, Suite 301
Chicago, Illinois 60661
(312) 463-9400
skitzinger@mkplawyers.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2016, I electronically filed the foregoing *Defendants' Response To Plaintiff's Motion To Enforce Settlement Agreement And For Sanctions* with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Grant Henry Peters
grant.peters@btlaw.com

Joan L. Long
joan.long@btlaw.com

s/Stanley A. Kitzinger_____
skitzinger@mkplawyers.com