IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ENGINEERED ABRASIVES, INC., | ) |
| | ) |
| Plaintiff, | ) No. 15 CV 6983 |
| | ) |
| v. | ) Magistrate Judge Michael T. Mason |
| | ) |
| AMERICAN MACHINE PRODUCTS & SERVICE, INC., et al., | ) |
| | ) |
| Defendants. | ) |

WRITTEN OPINION entered by Magistrate Judge Michael T. Mason: For the reasons set forth below, plaintiff's motion to enforce settlement agreement and for sanctions [37] is denied. Defendants' motion to strike declarations as improper parol evidence [41] is denied. Plaintiff's motion for leave to file reply [50] is granted as the Court considered plaintiff's reply before issuing this opinion. Plaintiff's Rule 60 motion for relief from order dated June 14, 2016 [45] is denied.

## STATEMENT

The parties in this matter have a litigious relationship dating back to 2011 when Edward Richerme, his wife Karen Richerme, and their son Edward C. Richerme left the employ of plaintiff Engineered Abrasives, Inc. ("EA") and formed their own company, American Machine Products & Service, Inc. ("AMPS"). In 2013, EA, through its attorneys Joan Long and Grant Peters, initiated an action in the Northern District of Illinois (hereinafter, the "Judge Ellis case") against AMPS, Edward, and Edward C., alleging trademark and copyright infringement, false advertising, unfair competition, deceptive trade practices, and consumer fraud, arising out of AMPS' improper use of EA's copyrighted and trademarked materials. *See Engineered Abrasives, Inc., v. American Machine Products & Service, Inc., et al.*, No. 13-CV-7342. Ultimately, on March 18, 2015, following an evidentiary hearing, Judge Ellis entered a judgment in favor of EA, and against AMPS, Edward and Edward C. in the amount of $719,814.04. *See Engineered Abrasives*, 2015 WL 1281460, at \*15 (N.D. Ill. Mar. 18, 2015). Post-judgment citation proceedings continued before Judge Ellis into early 2016.

At the same time EA initiated the case before Judge Ellis, it initiated a parallel state court action (the "state court case") against AMPS, Edward and Edward C. We can glean from the detailed opinion in Judge Ellis's case that the state court entered

1

injunctions in 2012 and 2013 limiting AMPS, Edward and Edward C. from, among other things, contacting EA's customers. *Engineered Abrasives*, 2015 WL 1281460, at *4. The state court case remains pending and is apparently now at the summary judgment stage. To be clear, attorneys Ms. Long and Mr. Peters do not represent EA in the state court case.

In August 2015, EA filed the instant action against AMPS, Edward, Karen and Edward C. (collectively, "defendants") alleging false and misleading statements in violation of the Lanham Act, commercial and product disparagement, unfair competition, deceptive trade practices, consumer fraud, tortious interference, and defamation. EA's claims in this action were based solely on defendants' conduct in July 2015, namely a July 21, 2015 e-mail from defendants to one of EA's customers accusing EA of "knowingly manufacturing and distributing equipment that does not meet code, fails to carry requisite certifications, and fails to meet industry standards." (Compl. ¶ 49.) EA is represented in this matter by attorneys Ms. Long and Mr. Peters. Defendants submitted the case to their insurer, Country Mutual Insurance ("Country"), who agreed to provide a defense subject to a reservation of rights.

The parties agreed to a preliminary injunction order before Judge Kocoras, proceeded with discovery, and requested a settlement conference, which was set before this Court on June 2, 2016. Pursuant to this Court's Standing Order for Settlement Conference, the parties submitted their demand and response letters to the Court prior to the conference. In EA's demand letter, counsel described defendants' alleged misconduct and based it's demand on damages related solely to that conduct, specifically for corrective advertising, damage to its representation, and attorney's fees and costs. In response, defendants disputed EA's substantive allegations, made an offer on behalf of Country, but stated further that "in light of the prior default judgment entered against Defendants in favor of EA, defendants are unable to offer anything towards settlement of this matter." (Defs.' Resp. Letter ¶ D.) This is the only mention in either letter about any other litigation between the parties.

This Court presided over the settlement conference on June 2, 2016. Present at that conference were the representative of plaintiff EA, Michael Werm; plaintiff's counsel Ms. Long and Mr. Peters; defendants Edward C. Richerme (personally and on behalf of AMPS), Edward Richerme and Karen Richerme; defense counsel Stanley Kitzinger; and a representative of Country Insurance, Dean Haritos. The parties proceeded with their negotiations with the assistance of the Court, discussing the monetary amount, a permanent injunction, and a liquidated damages clause for any breach of that injunction. Notably, the parties never spoke in terms of a global settlement as is often the case at settlement conferences between parties with parallel and related cases. And defendants never asserted, individually or through their counsel, that any agreement must be contingent upon the dismissal of the state court action or the release of the prior judgment in Judge Ellis' case.

At some point during the conference, plaintiff's counsel presented a draft written

2

agreement, described by plaintiff's counsel as a "working draft." (Mot. to Enforce at Ex. A. - Long Decl. ¶ 7.) The draft included both standard terms and terms specific to this action, with a space left blank for any monetary payment. Relevant to the pending motions is the "Mutual Release" clause, which provides, in relevant part:

> 8(a). EA ... hereby releases Defendants, their subsidiaries, affiliates, officers, directors, employees, agents, attorneys, shareholders, successors and assigns, of and from any and all rights, claims, debts, demands, acts, agreements, liabilities, obligations, damages, costs, attorneys' fees, expenses, actions, and/on causes of action of every nature, character and description, whether known or unknown, suspected or unsuspected, which it ever had, now has, or may hereafter claim to have by reason of any matter, cause or circumstance whatsoever arising or occurring prior to and including the date of the Agreement, including but not limited to the claims and defenses set forth in the Action.

(Mot to Enforce at Ex. C - Settlement Agreement ¶ 8.) The parties never discussed the language of the release, nor any of the other standard contract terms included in plaintiff's working draft at the settlement conference.

Ultimately, after a few hours of negotiations, the parties agreed to a settlement involving a monetary payment of $75,000 from Country to EA; an order permanently enjoining defendants from making false and misleading statements about EA; and a liquidated damages clause, whereby defendants would pay $250,000 for any breach of the permanent injunction. The parties made handwritten edits to the working draft to reflect these terms. When asked if the parties wished to finalize a clean copy of the agreement, defense counsel stated that he wanted to "get it all done today" and have the parties sign the working draft. After reviewing the draft and the handwritten changes, all parties did in fact execute the working draft that had been prepared and presented by plaintiff's counsel.

At the close of the settlement conference, as is this Court's customary practice, plaintiff's counsel was asked to place the terms of the agreement on the record. As reflected in the transcript, plaintiff's counsel Joan Long stated the following:

> MS. LONG: So the terms are payment from the insurer to Engineered Abrasives in the amount of ... $75,000.
>
> And a permanent injunction against false and misleading statements about EA and a liquidated damages clause for a breach of the permanent injunction ... as outlined in the written agreement signed by all parties here today.

(Dkt. No. 36 - 6/2/16 Transcript p. 4-5.) Again, no mention was made on the record of the language of the release clause or any other litigation between the parties. The Court then asked the representative for the plaintiff, each of the defendants, and the representative for Country if they understood and agreed to the terms of the settlement.

3

Each one of them answered in the affirmative, and the Court considered the parties to have reached a binding settlement agreement. The parties also consented to the jurisdiction of this Court pursuant to 28 U.S.C. § 636(c). (Dkt. No. 31.) This Court set a status hearing in two weeks, but told the parties they need not appear if they filed their joint stipulation to dismiss prior to that date.

It is undisputed that quickly following the successful settlement conference, Country made the $75,000 payment to EA. Around that same time, on June 6, 2016, Ms. Long e-mailed defense counsel Mr. Kitzinger, stating the following:

> [W]e hear there has been some noise that Defendants may try to argue the settlement of [this case] impacts the state case. As such, we will need written confirmation that the pending state court action (for a separate cause of action, pending before a different judge in a different jurisdiction with different counsel and without insurance coverage) was not part of the settlement discussion or resolution and the claims and remedies at issue in the state action are not released, or in any way impacted, by the settlement of [this case]. Unless we can confirm that with you, we will need [to] hold off on entering the dismissal and seek clarification on the record from Judge Mason ... I'm hoping you can confirm the state action was not part of our settlement so we can enter the dismissal and close this matter.

(Defs.' Resp. to Rule 60 Mot. at Ex. A-1, p. 4-5.) Mr. Kitzinger responded that he did not represent the defendants in any other case and that "the terms of the settlement are set forth in the Settlement Agreement [Ms Long] drafted and the parties signed." (*Id.* at p. 4.) He claimed he could not tell Ms. Long "what another attorney in another case may or may not argue," and that in light of the accepted payment, "defendants have completed all acts required under the terms of the Settlement Agreement [and] all that is left to do is enter the stipulation to dismiss EA's claims with prejudice..." (*Id.*)

Strangely, though Mr. Kitzinger did not in fact confirm Ms. Long's understanding of the settlement, she wrote back stating, "Thank you for your confirmation ... that the settlement was resolved ... in [the] federal case" and she provided a draft motion to dismiss for Mr. Kitzinger's review. (*Id.* at p. 3.) Not surprisingly, Mr. Kitzinger responded that he was "puzzled" by Ms. Long's e-mail, and again reiterated his belief that the terms of the agreement were set forth in the agreement Ms. Long drafted and the parties signed, "nothing more, nothing less." (*Id.*) Counsel exchanged a few more e-mails, in which Ms. Joan expressed her view that the parties had no authority and did not intend to settle the state court action, and Mr. Kitzinger stated that the agreement spoke for itself. (*Id.* at 1-2.) In this Court's view, Mr. Kitzinger spoke in somewhat cryptic language in the entire e-mail exchange and never explicitly expressed his belief that the release language in the agreement encompassed the release of the state court action and the previous judgment by Judge Ellis. We know now, by way of Mr. Kitzinger's declaration, that he did in fact believe during the settlement negotiations that plaintiff would be releasing the state court case as well as the judgment. (Defs' Resp. to Rule 60 Mot. at Ex. A - Kitzinger Decl. ¶ 6.)

4

In any event, despite the uncertainties that appeared to be remaining, the parties filed their signed, joint motion to dismiss on June 9, 2016, stipulating that the case be dismissed with prejudice pursuant to the settlement agreement. (Dkt. No. 33.) On June 14, 2016, this Court entered the proposed dismissal order that was submitted by the parties, dismissing this case with prejudice. (Dkt. Nos. 34, 35.) The dismissal order included the following language: "Magistrate Judge Michael T. Mason will retain jurisdiction for enforcement of the settlement agreement terms." (Dkt. No. 35.)

Only after the stipulation and dismissal order were entered did defendants ask the state court judge to dismiss the state court case based on the release clause in the settlement agreement in this matter. On June 30, 2016, Mr. Kitzinger also filed his appearance on behalf of the defendants in Judge Ellis' case and filed a motion asking Judge Ellis to vacate the almost $720,000 judgment for the same reason. Of course, EA vehemently opposes defendants' course of action and a barrage of motions before this Court followed. We discuss each one in turn below.

**Plaintiff's Motion to Enforce and for Sanctions**

Upon learning of defendants conduct in the other cases, plaintiff filed a motion to enforce the settlement agreement and for sanctions. (Dkt. No. 37.) In that motion, plaintiff argues that "defendants breached at least two terms of the settlement agreement" and asks the Court to "nullify the release as to defendants" under Section 8(b) of the Agreement.[1] (Pl.'s Mot. to Enforce p. 1.)

Specifically, plaintiff argues that defendants breached Section 14 of the Agreement, which recites the parties' acknowledgment that the Agreement was the result of extensive good faith negotiations. According to plaintiff, defendants acted in bad faith when they failed to inform plaintiff or the Court of their broad interpretation of the release clause. Plaintiff asks this Court to interpret the release in its favor so as to only encompass the release of the claims in this action. Plaintiff also argues that by seeking relief from the state court judge and Judge Ellis, defendants breached the "Choice of Law and Forum Selection" under Section 5, which requires that any action to enforce the Agreement be brought in the Northern District of Illinois. Alternatively, plaintiff seeks rescission of the entire Agreement due to defendants' alleged misrepresentations related to the release and because there was no meeting of the minds.

Defendants respond that plaintiff's motion is not in fact a motion to enforce, over which the defendants mistakenly believe the court would have jurisdiction. Instead, defendants characterize plaintiff's motion as one to interpret or rescind the agreement,

---

[1] That provision provides, in relevant part: "If any of the Parties hereto breach the Agreement in any respect, the releases in their favor shall be null and void as though it had never taken effect." (Agreement ¶ 8(b).)

5

over which the Court lacks jurisdiction. Though defendants somewhat miss the mark, we agree that, whatever you call it, plaintiff's motion to enforce falls short under well established Seventh Circuit precedent.

When a case is dismissed with prejudice, as was this one, "it is gone, and the district court cannot adjudicate disputes arising out of the settlement that led to the dismissal merely by stating that it is retaining jurisdiction." *Dupuy v. McEwen*, 495 F.3d 807, 809 (7th Cir. 2007); *see also Shapo v. Engle*, 463 F.3d 641, 643 (7th Cir. 2006) ("[A] district judge cannot dismiss a suit with prejudice, thus terminating federal jurisdiction, yet at the same time retain jurisdiction to enforce the parties' settlement that led to the dismissal with prejudice."). "Jurisdiction to enforce a settlement agreement may be explicitly retained by the district court only if: 1) the action is dismissed without prejudice; or 2) a consent decree incorporating the terms of the settlement agreement is entered." *Natkin v. Winfrey*, No. 99-CV-5367, 2015 WL 8484511, at *3 (N.D. Ill. Dec. 8, 2015) (citing *Shapo*, 463 F.3d at 642).

It is worth noting here that plaintiff's request for enforcement and claims of a "breach" by defendants are somewhat of a stretch. It is undisputed that defendants made the payment as directed, and there are no allegations that defendants have made misrepresentations about plaintiff in violation of the injunction. Instead, as defendants point out, plaintiff appears to be asking the Court to interpret the terms of the agreement, specifically, the release clause.

Even assuming there is a provision of the Agreement to actually enforce, this Court lacks jurisdiction to grant the relief plaintiff seeks. As explained above, on June 9, 2016, the parties filed their signed, joint motion to dismiss, stipulating to a dismissal with prejudice. To be clear, although the parties captioned that stipulation as a motion, which this Court ultimately granted, that stipulation was self-executing and effective upon filing. *See* Fed. R. Civ. P. 41(a)(1)(A)(ii) (allowing voluntary dismissal without a court order upon the filing of a "stipulation of dismissal signed by all parties who have appeared"); *see also, Nelson v. Napolitano*, 657 F.3d 586, 587 (7th Cir. 2011) (holding that although the plaintiff miscaptioned their notice of dismissal as a motion, "that filing effected the immediate dismissal of the suit" and noting that the "court's subsequent order purporting to dismiss the case was therefore void and had no legal effect."); *Grossinger Motorcorp., Inc. v. Thomas*, No. 11-CV-5608, 2013 WL 1787825, at *2 (N.D. Ill. Apr. 25, 2013) (finding that a stipulation to dismiss under Rule 41(a)(1)(A)(ii) becomes "effective the moment it [is] filed").

In any event, neither the parties' self-executing dismissal with prejudice, or the Court's dismissal order, explicitly incorporated the terms of the Agreement or the injunctive portion of the agreement. Though the Court's dismissal order also inartfully included language purporting to retain jurisdiction to enforce the terms of the Agreement, under the case law cited above, this is insufficient to confer jurisdiction to enforce the settlement. *See Lynch, Inc. v. SamataMason Inc.*, 279 F.3d 487, 489 (7th Cir. 2002) ("Having dismissed the entire litigation [with prejudice], the court had no

6

jurisdiction to do anything further."). It follows then that absent diversity jurisdiction, which is not apparent here, any breach of the parties' agreement or disputes arising therefrom must be remedied in state court under state contract law.[2] *Id.* ("Because the parties are not diverse, any suit to enforce the settlement agreement in this case would have to be brought in state court even though the settlement was of federal as well as state claims"); *see also*, *Neuberg v. Michael Reese Hosp. Found.*, 123 F.3d 951, 955 (7th Cir. 1997) (noting that "a dispute over the interpretation of the settlement agreement is a legal matter distinct from the underlying litigation."). Further, the parties' inclusion of the choice of law and forum selection provision is of no moment as it cannot serve as a basis for jurisdiction. *See Shapo*, 463 F.3d at 645 ("Parties cannot confer federal jurisdiction by agreement.").

For all of these reasons, plaintiff's motion to enforce and for sanctions is denied for lack of jurisdiction. Nonetheless, we can and will consider some of the arguments raised in plaintiff's motion to enforce, and the declarations submitted therewith, in the context of plaintiff's Rule 60 motion. As such, defendants' motion to strike those declarations (Dkt. 41) is denied.

**Plaintiff's Rule 60 Motion for Relief from Dismissal Order**

After defendants pointed out the jurisdictional problems in plaintiff's motion to enforce, plaintiff filed its Rule 60 motion.[3] According to plaintiff, defendants' conduct related to the release clause requires the Court to vacate the final dismissal order under Rule 60(b)(3), which allows for such relief in instances of fraud, misrepresentation, or misconduct by an opposing party. Alternatively, plaintiff argues that the final dismissal order must be vacated under the catchall provision of Rule 60, which allows such a result under "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Plaintiff asks the court to reinstate the case so that it may continue its litigation against defendants.

Defendants respond, vehemently denying any fraudulent or improper conduct during the settlement negotiations. Although defense counsel admits that he always interpreted the release clause to encompass Judge Ellis' case and the state court case, he argues that he had no duty to disclose that interpretation to plaintiff or plaintiff's counsel, who drafted and presented the very agreement containing that clause. Defense counsel also denies that he made any misrepresentations to Ms. Long in the e-mails exchanged regarding the interpretation of the release clause. As explained in more detail below, though defendants' conduct is troubling, we agree that it does not

---

[2] We note that the release clause does not appear to bar any subsequent claims arising out of the agreement.

[3] At a minimum, this Court views plaintiff's Rule 60 motion as the more proper procedural vehicle for the relief sought.

7

warrant relief under Rule 60.

As a preliminary matter, there remains some uncertainty whether, after voluntarily stipulating to dismiss a case with prejudice pursuant to Rule 41(a)(1), the plaintiff may seek relief under Rule 60(b).[4] This question was addressed in detail by Judge Kapala in the case of *Grossinger v. Thomas*, 2013 WL 1787825, at *2-3. Citing *McCall-Bey v. Franzen*, 777 F.2d 1178, 1186 (7th Cir. 1985), Judge Kapala noted that there is some language from the Seventh Circuit "that suggests a Rule 60(b) motion could provide a remedy" following a dismissal order under Rule 41. *Grossinger*, 2013 WL 1787825, at *2. But, as Judge Kapala points out, in *McCall-Bey*, the court's dismissal order was filed before the parties' stipulation to dismiss, and the parties "treat[ed] the judge's order rather than the stipulation, as the terminating event of the litigation." *Id.* (quoting *McCall-Bey*, 777 F.2d at 1185). By contrast, in *Grossinger*, and here, the stipulation (improperly captioned as a motion in our case) was filed before the Court's dismissal order, and was effective upon filing. Because of this distinction, Judge Kapala concluded that the discussion of Rule 60(b) in the *McCall-Bey* opinion was "not necessarily controlling." *Grossinger*, 2013 WL 1787825, at *2.

Judge Kapala was also uncertain whether a more recent Seventh Circuit opinion, *Nelson v. Napolitano*, 657 F.3d 586 (7th Cir. 2011), further clarified the issue. *See Grossinger*, 2013 WL 1787825, at *3. In *Nelson,* the Seventh Circuit ultimately "agree[d] that there may be instances where a district court may grant relief under Rule 60(b) to a plaintiff who has voluntarily dismissed the action." *Nelson*, 657 F.3d at 589. But the Court reached this conclusion after citing to *McCall-Bey*, and mentioning the extreme example of "a defendant faking his own death with a fraudulent death certificate in order to induce a plaintiff to voluntarily dismiss." *Id.* Having already distinguished *McCall-Bey*, Judge Kapala was left wondering whether Rule 60(b) relief could be awarded in his case. This Court is left wondering the same.

But, even assuming this Court can award Rule 60(b) relief following plaintiff's Rule 41(a)(1) voluntary dismissal, such relief is not appropriate here under either provision of the Rule relied upon by plaintiff. Again, under Rule 60(b)(3), a court may relieve a party from a final order for fraud, misrepresentation, or misconduct by an opposing party. A party seeking relief under Rule 60(b)(3) must show by clear and convincing evidence "that she has a meritorious claim that she was prevented from fully and fairly presenting at trial as a result of the adverse party's fraud, misrepresentation, or misconduct." *Wickens v. Shell Oil Co.*, 620 F.3d 747, 758-59 (7th Cir. 2010) (citations omitted). As a general matter, Rule 60(b) relief is "an extraordinary remedy and is granted only in exceptional circumstances." *McCormick v. City of Chicago*, 230 F.3d 319, 327 (7th Cir. 2000). The Seventh Circuit has even described a court's decision not to reinstate a case under Rule 60(b) as "discretion piled on discretion." *Id.*

---

[4] Again, though captioned a motion to dismiss, the parties' signed stipulation was effective as a Rule 41(a)(1) dismissal upon filing.

(quoting *Tolliver v. Northrop Corp.*, 786 F.2d 316, 319 (7th Cir.1986)).

According to plaintiff, defendants' misconduct related to the release clause "led directly to the dismissal of the case with prejudice, cutting off EA's ability to prove its case." (Pl.'s Rule 60 Mot. p. 7.) Specifically, plaintiff takes issue with defendants' failure to disclose its broad interpretation of the release to plaintiff or the Court during the settlement conference; defense counsel's misleading statements in the e-mail exchange; and defendants' misrepresentation to Judge Ellis and the state court judge that the parties agreed to release those claims. Plaintiff's argument is certainly persuasive, and its position sympathetic. But, when viewed in light of all of the circumstances here, plaintiff's motion once again falls short.

Blatantly problematic to the plaintiff's position is that plaintiff's counsel drafted and presented the agreement containing the very release clause at issue during the settlement conference, all the while being fully aware of the existence of the other litigation between the parties. Though Ms. Long apparently considered the written agreement to be a "working draft," she never mentioned that the release clause or any other general terms would require further discussion or negotiation, and she permitted her client to sign the agreement at the conclusion of the settlement conference. Although plaintiff argues that defendants had a duty to disclose their interpretation of the release clause (drafted by plaintiff's own attorney) at the conference, plaintiff cites no authority for such a duty.

As for defense counsel's e-mails following the conference, though cryptic and somewhat misleading, the Court finds they do not rise to the level of fraud or misconduct contemplated by Rule 60(b)(3). For example, Mr. Kitzinger's statement that he did not represent the defendants in any other matter was not technically a misrepresentation because he did not file his appearance before Judge Ellis until a few weeks later. Mr. Kitzinger also repeatedly declined to confirm in writing plaintiff's version of the release, but spoke in very general terms that the agreement spoke for itself. For whatever reason, plaintiff did not see through these cryptic e-mails and, instead of bringing the clearly unresolved issue before the Court, filed the stipulation to dismiss, thereby terminating the action pursuant to the settlement agreement.[5] In the Court's view, despite some questionable gamesmanship on behalf of defendants, all of these circumstances, including plaintiff's own counseled actions, weigh against relief

---

[5] To the extent that plaintiff would argue that the stipulation to dismiss was filed mistakenly, inadvertently, or by reason of excusable neglect, *see* Fed. R. Civ. P. 60(b)(1), this argument would also likely fail. *See Eskridge v. Cook Cty.*, 577 F.3d 806, 810 (7th Cir. 2009) (finding that "counsel's incorrect assessment of the consequences of [voluntarily dismissing the lawsuit] did not compel relief under Rule 60(b)"); *McCormick*, 230 F.3d at 327-28 ("[W]hen a party makes a deliberate, strategic choice to settle, she cannot be relieved of such a choice merely because her assessment of the consequences was incorrect"); *see also*, *Edwards-Brown v. Crete-Monee*, 201-U Sch. Dist., 491 F. App'x 744, 747 (7th Cir. 2012).

under Rule 60(b)(3).

Similarly, relief under Rule 60(b)(6) is not warranted.  Rule 60(b)(6) is an even more "highly circumscribed exception" to a "rule already limited in application to extraordinary circumstances."  *Provident Sav. Bank v. Popovich*, 71 F.3d 696, 700 (7th Cir. 1995).  As explained above, such exceptional circumstances are simply not present here.  Further, while a complete repudiation of a settlement agreement may warrant relief under 60(b)(6), *see Neuberg*, 123 F.3d at 954, that is not what has happened here, where defendants have satisfied their monetary obligation and have not otherwise breached the injunction set forth in the agreement.  Instead, after settling and dismissing their case, the parties have reached an impasse as to the interpretation and scope of the release clause.  Rule 60(b)(6) relief is not appropriate in such a situation. *See Neuberg v. Michael Reese Hosp. & Med. Ctr.*, 166 F.R.D. 398, 400 (N.D. Ill. 1996) ("Repudiation is much more than a disagreement with conditions of the settlement; repudiation is a complete frustration of the agreement."); *Wilson v. Potter*, No. 02-CV-003, 2006 WL 623600, at *5 (N.D. Ind. Mar. 9, 2006) ("A dispute over the terms of the settlement agreement is not sufficient to vacate dismissal under Rule 60(b)(6).").

Most importantly, plaintiff is not without recourse.  Plaintiff can, and should, continue to vehemently object to defendants' motions before Judge Ellis and the state court judge.  Those judges will proceed as they see fit.  And, as discussed above, the release clause does not appear to bar plaintiff from bringing any additional claims arising out of the settlement agreement in state court.  For all of these reasons, plaintiff's Rule 60 motion for relief from the June 14, 2016 order is denied.

**Date:   August 1, 2016**                                                                                          /s/ Michael T. Mason